Filed 5/2/13

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| MENDOCINO COMMUNITY HEALTH CLINIC et al.,<br><br>        Plaintiffs and Respondents,<br><br>    v.<br><br>STATE DEPARTMENT OF HEALTH CARE SERVICES,<br><br>        Defendant and Appellant. | C067826<br><br>(Super. Ct. No. 34-2010-80000436-CU-WM-GDS) |

APPEAL from a judgment of the Superior Court of Sacramento County, Michael P. Kenny, Judge. Reversed with directions.

Kamala D. Harris, Attorney General, and Ismael A. Castro and Pauline Gee, Deputy Attorneys General, for Defendant and Appellant.

Law Offices of Douglas S. Cumming and Douglas S. Cumming for Plaintiffs and Respondents.

In this appeal, we must determine whether the Department of Health Care Services (Department), which administers Medi-Cal, may limit payment to federally-qualified

1

health centers (FQHC's) for psychological services to two visits per month per patient. The Department concluded that it can, but the trial court granted the petition of Mendocino Community Health Clinic and other related clinics (the Mendocino Clinics), which are FQHC's, for a writ requiring payment beyond the two-visit limit. We conclude that the petition was improperly granted. Federal law does not prohibit a state's application of utilization controls to psychology services rendered at an FQHC, and state law provides for those utilization controls.

BACKGROUND

At the time relevant to this appeal, the Medi-Cal program, which is California's application of federal Medicaid law, provided coverage of outpatient clinic psychology services. These services, however, are subject to utilization controls. (*Cowan v. Myers* (1986) 187 Cal.App.3d 968, 973; Welf. & Inst. Code, § 14132, subd. (a).)

Welfare and Institutions Code section 14132, subdivision (a) provides that outpatient psychology services are covered by Medi-Cal, "subject to utilization controls." Section 51304, subdivision (a) of title 22 of the California Code of Regulations states: "[Medi-Cal] coverage of services specified in Section[] . . . 51309 [psychology services] . . . is limited to a maximum of two services from among those services set forth in those sections in any one calendar month." Subdivision (b) of the same section states: "For purposes of this section, 'services' means all care, treatment, or procedures provided a beneficiary by an individual practitioner on one occasion."

The Mendocino Clinics, which are FQHC's, are Medi-Cal providers of outpatient clinic services. FQHC's were described in a federal case (*Three Lower Counties Community Health Services, Inc. v. State of Maryland* (4th Cir. 2007) 498 F.3d 294 (*Three Lower Counties*)), upon which the Mendocino Clinics rely in this case:

"The federal Medicaid program provides federal financial assistance to States that choose to participate in the program and requires the States to reimburse healthcare providers who provide services to Medicaid enrollees. . . . States need not participate in

2

the program, but if they choose to do so, 'they must implement and operate Medicaid programs that comply with detailed federally mandated standards.' [Citation.]

"One federal requirement is that a state Medicaid plan provide payment for services rendered by 'Federally-qualified health centers' ('FQHCs'). *See* 42 U.S.C. § 1396a(a)(15); id. § 1396d(a)(2)(C); *id.* § 1396d(*l*)(2). FQHCs are defined as health centers that receive, or meet the requirements for receiving, grants under § 330 of the Public Health Service Act. *Id.* § 1396d(*l*)(2). . . .

"From 1989 through 2000, the federal Medicaid program required States to reimburse FQHCs for '100 percent . . . of [each FQHC's] costs which are reasonable.' 42 U.S.C. § 1396a(a)(13)(C) (repealed 2000). Congress' purpose in passing this '100 percent reimbursement' requirement was to ensure that health centers receiving funds under § 330 of the Public Health Services Act would not have to divert Public Health Services Act funds to cover the cost of serving Medicaid patients. . . . [¶] . . . [¶]

"To relieve health centers from having to supply new cost data every year, Congress amended the Medicaid Act in 2000 to implement a new *prospective* payment system based on average historical costs plus a cost-of-living factor. The new prospective payment system, which began with fiscal year 2001, required state Medicaid plans to 'provide for payment for such services [provided by an FQHC] in an amount (calculated on a per visit basis) that is equal to 100 percent of the average of the costs of the center or clinic of furnishing such services during fiscal years 1999 and 2000 which are reasonable.' 42 U.S.C. § 1396a(bb)(2). That is, under the new system, each health center's reasonable costs for providing Medicaid services for the years 1999 and 2000 were added together, and the sum was divided by the total number of visits by Medicaid patients in those two years to obtain an average per-visit cost rate. This average per-visit cost rate for the years 1999 and 2000 became the baseline per-visit rate to be applied in all future years, adjusted by a cost-of-living index (the Medicare Economic Index) and

any change in the scope of services. *See* 42 U.S.C. § 1396a(bb)(2)-(3)." (*Three Lower Counties, supra*, 498 F.3d at pp. 297-298, original italics.)

*Three Lower Counties* also quoted a report of the House Budget Committee concerning the 1989 legislation:

"Medicaid payment levels to Federally-funded health centers cover less than 70 percent of the costs incurred by the centers in serving Medicaid patients. The role of [these health centers] . . . is to deliver comprehensive primary care services to underserved populations or areas without regard to ability to pay. To the extent that the Medicaid program is not covering the cost of treating its own beneficiaries, it is compromising the ability of the centers to meet the primary care needs of those without any public or private coverage whatsoever. [¶] . . . [¶]

"To ensure that Federal [Public Health Service] Act grant funds are not used to subsidize health center or program services to Medicaid beneficiaries, States would be required to make payment for these [FQHC] services at 100 percent of the costs which are reasonable and related to the cost of furnishing those services. [Citation.]" (*Three Lower Counties, supra,* 498 F.3d at pp. 297-298.)

The Mendocino Clinics provide outpatient clinic psychology services, which are the subject of this litigation.

In 2003, the Legislature passed Welfare and Institutions Code section 14132.100, stating in subdivision (a) that "federally qualified health center services described in Section 1396d(a)(2)(C) of Title 42 of the United States Code are covered benefits" under Medi-Cal. (Stats. 2003, ch. 527, § 2.) The statute, which codified California's payment system for FQHC's, did not refer to outpatient psychology services except to say that a face-to-face encounter with a psychologist or social worker is a "visit" for the purpose of Medi-Cal payment to the FQHC. (Welf. & Inst. Code, § 14132.100, subd. (g).) Welfare and Institutions Code section 14132.100 does not mention utilization controls.

4

The Department's provider billing manual, which has not been adopted as a regulation, states: "Medi-Cal Service limitations (two services per month) apply when rendered in an . . . FQHC."

In the fiscal years ending June 30, 2004, and June 30, 2005, the Mendocino Clinics provided psychology services to Medi-Cal patients.[1] After the Department determined that the Mendocino Clinics were not eligible for Medi-Cal payment for more than two visits per month per patient for psychology services, the Mendocino Clinics sought administrative review.

In a hearing before an administrative law judge, the Mendocino Clinics argued that the two-visit limit does not apply to FQHC's because FQHC's are not the same type of provider as an individual practitioner, which provider type existed before the creation of FQHC's. According to the Mendocino Clinics, section 51304, subdivision (a), of title 22 of the California Code of Regulations applies to individual practitioners, not to FQHC's. The Mendocino Clinics reasoned that in the FQHC context, the FQHC is the provider of services, not an individual practitioner. The Mendocino Clinics also argued that psychology services are "core services" of an FQHC and therefore must be reimbursed by Medi-Cal under federal law.

The administrative law judge concluded: "Absent a federal law specifically exempting FQHCs from existing state Medicaid limitations, the California FQHCs [are] subject to both state and federal limitations. [¶] . . . There was no showing that federal law was intended to supplant state Medi-Cal limitations on payments to FQHCs; the

---

[1] In the trial court, the Mendocino Clinics also alleged that the Department improperly applied utilization controls to podiatric and chiropractic services. However, the trial court found in favor of the Department as to those services, and the Mendocino Clinics have not appealed.

better view is that where the state and federal limitations are not contradictory, both apply."

The administrative law judge's decision was adopted as the final decision of the Department.

The Mendocino Clinics filed a petition for writ of administrative mandate in the trial court. That court granted the petition, concluding that the two-visit utilization control found in section 51304, subdivision (a), of title 22 of the California Code of Regulations cannot be applied to psychology services rendered by an FQHC because (1) under federal law psychology services are core FQHC services for which the FQHC must be fully reimbursed and (2) even if federal law did not prohibit application of utilization controls to psychology services rendered by an FQHC, under state law the Legislature has not exercised its authority to impose utilization controls on those services.

## DISCUSSION

We conclude that (1) federal law does not prohibit application of California's two-visit rule to psychology services provided by an FQHC and (2) state law provides for application of the two-visit rule to psychology services provided by an FQHC.

## I

### *Federal Law*

For many years, the federal government has allowed, even required, states to adopt utilization controls to insure efficient use of Medicaid funds. "The federal Medicaid Act . . . gives the States substantial discretion to choose the proper mix of amount, scope, and duration limitations on coverage, as long as care and services are provided in 'the best interests of the recipients.' 42 U. S. C. § 1396a(a)(19)." (*Alexander v. Choate* (1985) 469 U.S. 287, 303 [83 L.Ed.2d 661, 673].) The Medicaid Act requires each state to impose "reasonable standards" for medical assistance. (42 U.S.C. § 1396a(a)(17); see also 42 C.F.R. § 440.230 [requiring state Medicaid plan to specify the amount, duration, and scope of each provided service].) In *Alexander v. Choate, supra*, the United States

6

Supreme Court held that a state is free under the Medicaid Act to limit the duration of a benefit. (469 U.S. at p. 303.) The Department argues that, under these authorities, it is allowed to impose utilization controls.

Critical to the trial court's holding and the Mendocino Clinics' argument on appeal is that federal law concerning FQHC's requires states to provide full reimbursement to FQHC's for core services. Full reimbursement, however, does not preclude utilization controls.

Provisions in the Medicaid Act provide that (1) an FQHC must provide core services, including psychology services (42 U.S.C. §§ 1395x(aa)(1)(B)&(3)(A); 1396d(*l*)(2)), and (2) a "State plan shall provide for payment for services . . . furnished by a Federally-qualified health center . . . ." (42 U.S.C., § 1396a(bb)(1); see also § 1396a(bb)(2)-(4).) The provisions further require timely payments. (42 U.S.C. § 1396a(bb)(5)(A)&(6)(B).) And the methodology used for payments to the FQHC must "result[] in payment to the center or clinic of an amount which is at least equal to the amount otherwise required to be paid to the center or clinic under this section." (42 U.S.C. § 1396(bb)(6)(B); see *California Ass'n of Rural Health Clinics v. Maxwell-Jolly* (E.D. Cal. 2010) 748 F.Supp.2d 1184, 1193.) These provisions, however, neither mention nor implicate utilization controls.

The Mendocino Clinics argue that title 42 United States Code section 1396a(bb)(2) and *Three Lower Counties* both make it "crystal clear that all FQHC visits must be reimbursed by State Medicaid programs . . . ." We perceive no such intent in those authorities. Neither the statute nor the case addresses state utilization controls. They also do not prohibit application of state utilization controls.

The statute, title 42 United States Code section 1396a, states in subdivision (bb)(2): "[T]he State plan shall provide for payment for [FQHC] services in an amount (calculated on a per visit basis) that is equal to 100 percent of the average of the costs of the center or clinic of furnishing such services during fiscal years 1999 and 2000 which

7

are reasonable and related to the cost of furnishing such services, or based on such other tests of reasonableness as the Secretary prescribes in regulations under section 1833(a)(3) [42 USCS § 1395*l*(a)(3)], or, in the case of services to which such regulations do not apply, the same methodology used under section 1833(a)(3) [42 USCS § 1395*l*(a)(3)], adjusted to take into account any increase or decrease in the scope of such services furnished by the center or clinic during fiscal year 2001."

The subdivision refers specifically to fiscal year 2001; however, succeeding provisions refer back to this subdivision for the methodology to be used in succeeding years.  (42 U.S.C. § 1396a(bb)(3).)

The Mendocino Clinics cite the language in this subdivision requiring states to pay "100 percent of the average of the costs of the center" as proof that states cannot impose utilization controls on FQHC's.  The position is untenable.  As we have noted, the subdivision simply does not address utilization controls.  The subdivision requires the state to pay 100 percent of the costs of each visit, but it does not prevent the state from limiting those visits as the Medicaid laws have allowed states to do.  That a state must fully reimburse an FQHC for services rendered does not necessarily mean that the state cannot limit the services rendered.  Accordingly, the subdivision does not provide authority for the proposition that the Department cannot impose utilization controls on FQHC's.

*Three Lower Counties* also does not support the Mendocino Clinics' position.  In that case, the court clarified Maryland's obligation to pay for services rendered at an FQHC.  (*Three Lower Counties, supra,* 498 F.3d at p. 296.)  The state used a methodology that did not fully compensate for services rendered at the FQHC's.  The court stated:  "At bottom, we conclude that the Medicaid Act requires Maryland to pay FQHC's fully compensatory supplemental payments not less frequently than four months after Maryland has received the claim for supplemental payment, as required by 42

8

U.S.C. § 1396a(bb)(5), and that Maryland has not been fulfilling this requirement."
(*Three Lower Counties, supra*, at p. 303, italics omitted.)

*Three Lower Counties* does not support the Mendocino Clinics' position because the court in that case considered the methodology for making payments and found the methodology wanting because it did not result in full payment to FQHC's for services rendered. The question of whether services may be limited was not considered. It therefore is not authority for the proposition that California cannot impose utilization controls on psychology services rendered at FQHC's.

The norm is that states can impose utilization controls to manage Medicaid funds, so we will not impute to Congress an intent to have the states pay for unlimited psychology services rendered to Medicaid patients by FQHC's without evidence that Congress so intended. Accordingly, we conclude that federal law does not prohibit California's adoption of utilization controls to insure efficient use of Medicaid funds by FQHC's.

II

*State Law*

The trial court found, and the Mendocino Clinics argue on appeal, that, even if federal law does not prohibit California's adoption of utilization controls to insure efficient use of Medicaid funds by FQHC's, California has not actually adopted such controls with respect to FQHC's. To the contrary, state law limits outpatient clinic psychology services, even those provided by an FQHC, to two visits per month. (22 Cal. Code Regs. § 51304.)

Welfare and Institutions Code section 14132 provides "the schedule of benefits under this chapter."[2] (See § 14000 et seq.) One of the benefits is outpatient clinic

---

[2] Hereafter, references to an unspecified code are to the Welfare and Institutions Code.

psychology services, which subdivision (a) provides "subject to utilization controls." Section 14133 permits controls to be imposed on the benefits provided in section 14132 (which are the "benefits under this chapter"), including "[l]imitation on number of services, which means certain services may be restricted as to number within a specified time frame." (§ 14133, subd. (d).) These statutes provide the authority for the regulation limiting outpatient clinic psychology services to two visits per month per patient. (22 Cal. Code Regs. § 51304.)

Section 14132.100, providing for FQHC benefits, is found in the same chapter of the Welfare and Institutions Code as section 14132 (which provides the schedule of benefits for the chapter) and 14133 (which allows for utilization controls). Therefore, outpatient clinic psychology services provided through an FQHC are subject to the utilization controls allowed by 14133, including the two-visit rule, on the benefits provided for in section 14132. Read together, sections 14132, 14133, and 14132.100 allow the Department to impose utilization controls on outpatient clinic psychology services provided by the Mendocino Clinics. This interpretation of the statutes is consistent with the Department's interpretation as expressed in the provider billing manual. (See *American Coatings Assn. v. South Coast Air Quality Management Dist.* (2012) 54 Cal.4th 446, 469 [according deference to agency's interpretation].)

The Mendocino Clinics assert that "a garden variety 'outpatient clinic' does not provide the same services as an FQHC." The only question here, however, is whether the Mendocino Clinics, which are FQHC's, provided outpatient clinic psychology services, and the parties appear to agree that they did and seek reimbursement for those services. That the system for reimbursing an FQHC outpatient clinic is different from the system for reimbursing other outpatient clinics that are not FQHC's does not, in our view, render FQHC's immune from the utilization controls for outpatient clinics.

The Mendocino Clinics and the trial court both found significance in the fact that the statute authorizing payments to FQHC's does not mention utilization controls. They

claim that this absence means that the Legislature did not intend to apply utilization controls to FQHC's. To the contrary, the absence of reference to utilization controls in the statutes concerning FQHC's could just as easily result from the Legislature's view that, because the FQHC's are rendering outpatient clinic services, they are subject to the already existing statutes and regulations concerning utilization controls applicable to outpatient clinics. That is the view taken by the Department. And we agree.

The two-visit rule, adopted as a utilization control in section 51304, subdivision (a), of title 22 of the California Code of Regulations, applies to psychology services rendered by the Mendocino Clinics.

## DISPOSITION

The order granting the petition is reversed and the matter is remanded with instructions to the trial court to deny the Mendocino Clinics' petition. The Department is awarded its costs on appeal. (California Rules of Court, rule 8.278(a)(3).)


                            NICHOLSON            , Acting P. J.



We concur:



        ROBIE          , J.



        MURRAY       , J.




11